GREENBERG TRAURIG, LLP
VALERIE W. HO (SBN 200505)
*Valerie.Ho@gtlaw.com*
LORI CHANG (SBN 228142)
*ChangL@gtlaw.com*
DAVID H. MARENBERG (SBN 329954)
*MarenbergD@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: 310-586-7700

Attorneys for Defendants Shein Distribution Corporation, Shein US Services, LLC, and Shein Technology, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Q PRODUCTIONS, LLC, a Texas limited liability company, and SUZETTE QUINTANILLA, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>SHEIN DISTRIBUTION CORPORATION, a Delaware corporation; SHEIN US SERVICES, LLC, a Delaware limited liability company, and SHEIN TECHNOLOGY LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO.: 2:26-cv-02588-JFW-ACCV<br><br>Assigned to: Hon. John F. Walter<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of L. Chang; Request for Judicial Notice; and Proposed Order]<br><br>Hearing Date: October 26, 2026<br>Hearing Time: 1:30 p.m.<br>Courtroom: 7A<br><br>Action Filed: March 11, 2026<br>Trial Date: October 19, 2027 |

# NOTICE OF MOTION AND MOTION

TO THE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, October 26, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable John F. Walter, United States District Judge for the Central District of California, located in Courtroom 7A, at First Street U.S. Courthouse, 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, Defendants Shein Distribution Corporation, Shein Technology LLC, and Shein US Services, LLC (collectively, "Defendants" or "SHEIN") will, and hereby do, move the Court for an order dismissing the Second Amended Complaint ("SAC") filed by Plaintiffs Q Productions, LLC and Suzette Quintanilla ("Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs do not state a claim for relief for several reasons.

First, Plaintiff Q Productions, LLC fails to state a claim for direct trademark infringement because SHEIN did not use Plaintiff's asserted marks in commerce. The SAC alleges that infringing marks appeared on products sold by "third-party merchants" on SHEIN's online marketplace. It further admits that none of the accused products were sold by SHEIN. While Q Productions contends that SHEIN is directly liable for displaying allegedly infringing third-party product listings in user-generated search results and for facilitating third-party sales, case law confirms that direct liability cannot be imposed on an online marketplace for merely providing a search tool that displays allegedly infringing third-party content in response to user-generated search queries, or for facilitating third-party transactions by processing payments or fulfilling orders.

Second, Plaintiff Q Productions, LLC fails to state a claim for contributory trademark infringement because it does not and cannot allege that SHEIN had the requisite intent to infringe, or that it even knowingly contributed to the alleged infringement by failing to disable access to allegedly infringing listings. Plaintiff does not allege inducement or that SHEIN's platform services are tailored for infringement. The SAC also does not allege that SHEIN ignored notices of alleged infringement or failed to take down a listing identified in

a prior notice, or that it took no action despite having specific knowledge of particular listings. Plaintiffs confirmed during the Parties' L.R. 7-3 conference that they are not aware of any listing identified in a prior notice that was not taken down by SHEIN. Moreover, the SAC alleges that SHEIN also implemented a filter to block searches for potentially infringing products. SHEIN therefore contends that it cannot be held contributorily liable for the conduct of third parties.

Third, Plaintiff Q Productions, LLC fails to state a claim for false designation of origin or for unfair competition because these claims are derivative of the trademark infringement claims and are premised on the same alleged facts and legal elements.

Fourth, Plaintiff Q Productions, LLC's state law unfair competition claim and Plaintiff Suzette Quintanilla's state law right of publicity claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), which broadly immunizes service providers like SHEIN from any cause of action that would make it liable for information originating from a third-party user—here, the third-party sellers who listed the allegedly infringing items for sale on SHEIN's platform.

Fifth, Plaintiffs fail to state a claim against Defendants based on an alleged single enterprise theory. SAC ¶ 8. Indeed, the SAC makes clear that each Defendant performs distinct business operations. While Shein US Services, LLC operates the Marketplace, the SAC alleges that Shein Distribution Corporation ("SDC") is a retailer but makes clear that none of the allegedly infringing products were sold by SDC. Further, Plaintiffs concede that dismissal of Shein Technology LLC ("Shein Tech") is appropriate based on Shein Tech's interrogatory responses confirming that it "plays no role in the SHEIN MARKETPLACE and plays no role in the sales of any products," and "does not play a role in software-development, data-hosting, search, recommendation, translation, or content-moderation." *See* Dkt. No. 36 (joint statement). Shein Tech's interrogatory responses have been verified, and there is no justifiable basis to condition Shein Tech's dismissal on further discovery unrelated to the services it provides when Shein Tech has verified that it is not involved in the operation of the Marketplace. *See* Declaration of Lori Chang, ¶ 3.

Accordingly, SDC and Shein Tech should be dismissed on the basis of these separate, independent grounds.

Finally, Plaintiff Suzette Quintanilla is not entitled to exemplary damages under the Texas right of publicity statute, because the SAC does not allege facts demonstrating malice, fraud, or gross negligence. To the extent that the right of publicity claim survives, the request for exemplary damages should be dismissed and/or stricken from the SAC's prayer for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) and (f).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Request for Judicial Notice ("RJN") and Declaration of Lori Chang ("Chang Decl."), all pleadings and papers on file in this action, and such other written or oral argument as may be properly presented to the Court at or before the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 8, 2026. The parties, through their counsel of record, held an in-person meeting and discussed the grounds for this Motion, as set forth in the Declaration of Lori Chang and in the previously filed joint statement (Dkt. No. 36). The parties were unable to reach a resolution.

Dated: September 17, 2026 GREENBERG TRAURIG, LLP

By: */s/ Lori Chang*
Valerie W. Ho
Lori Chang David H. Marenberg
Attorneys for Defendants Shein Distribution Corporation, Shein US Services, LLC, Shein Technology, LLC

# TABLE OF CONTENTS

Page(s)


I. INTRODUCTION .......... 1

II. PLAINTIFFS' ALLEGATIONS .......... 2

A. Plaintiffs Allege "Third-Party Merchants" Sold Infringing Products .......... 2

B. Plaintiffs Do Not Allege that SHEIN Failed to Remove Accused Listings or Induced Infringement .......... 3

C. Plaintiffs Accuse SHEIN of Infringement Based on Marketplace Operations .......... 5

III. LEGAL STANDARD .......... 7

IV. ARGUMENT .......... 8

A. Plaintiff Does Not Plausibly Allege that SHEIN Used the "Selena" Marks .......... 8

1. Plaintiff does not allege an infringing advertisement .......... 9

2. SHEIN's generic search tool does not infringe Plaintiff's marks .......... 9

3. No direct liability for facilitating third-party Marketplace transactions .......... 13

B. SHEIN is Not Contributorily Liable – the SAC Does Not Allege that SHEIN Intentionally Encouraged Infringement, and SHEIN Disabled Access to the Accused Listings .......... 13

C. Plaintiff's Unfair Competition and False Designation Claims Are Derivative of the Trademark Infringement Claims and Thus Fail for the Same Reasons .......... 16

D. Section 230 of the CDA Bars Plaintiffs' State Law Claims for Unfair Competition and Violation of the Right of Publicity .......... 16

E. Plaintiffs Cannot in Good Faith Plead a Claim Against SDC or Shein Tech ..... 19

F. Plaintiffs Are Not Entitled to Exemplary Damages ..... 20

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. JAND, Inc.*,
119 F.4th 234 (2d Cir. 2024) ... 10

*Altinex v. Alibaba.com Hong Kong Ltd.*,
2016 WL 6822235 (C.D. Cal. Mar. 25, 2016) ... 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 7

*Bear Omnimedia LLC v. Mania Media LLC*,
No. 2:17–cv–01478, 2018 WL 2323463 (D. Nev. May 22, 2018) ... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 7

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ... 8

*City of Ingleside v. Kneuper*,
768 S.W.2d 451 (Tex. App. 1989) ... 20

*Comeback Media, Inc. v. Particle Media, Inc.*,
No. 25-cv-03298, 2025 WL 3030438 (N.D. Cal. Oct. 30, 2025) ... 12

*Cox Commc'ns, Inc. v. Sony Music Entm't*,
607 U.S. 583 (2026) ... 13, 14, 15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ... 7

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ... 8

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ... 18

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ... 18

*Free Kick Master LLC, et al. v. Apple Inc., et al.*,
No. 15-cv-3403, 2016 WL 777916 (N.D. Cal. Feb. 29, 2016)....................................... 15

*Gas Drawls, LLC v. Whaleco, Inc.*,
No. 2:25-cv-07425, 2025 WL 4058287 (C.D. Cal. Dec. 5, 2025) .........................*passim*

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ............................................................... 19

*King Spider LLC v. Panda (Hong Kong) Tech. Co., Ltd.*,
No. 24-CV-2668, 2025 WL 89123 (S.D.N.Y. Jan. 14, 2025)...................................... 11

*Lee v. SBS Corp.*,
No. 2:26-cv-03144, 2026 U.S. Dist. LEXIS 153305 (C.D. Cal. July 9, 2026)............. 15

*Ligeri v. Amazon.com Servs. LLC*,
No. 2:25-cv-00764, 2025 WL 3013727 (W.D. Wash. Oct. 28, 2025) ............................ 8

*Lopez v. BigCommerce, Inc.*,
No. 16-CV-8970, 2017 WL 3278932 (S.D.N.Y. Aug. 1, 2017) .................................... 12

*Merck & Co. v. Mediplan Health Consulting*,
425 F. Supp. 2d 402 (S.D.N.Y. 2006) ................................................................... 12

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)............................................................................................ 14

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
No. C13-1932RSM, 2015 WL 4394673 (W.D. Wash. July 16, 2015) .................. 11, 13

*Nomination Di Antonio E Paolo Gensini S.N.C., et al. v. H.E.R. Accessories Ltd., et al.*,
No. 07 CIV 6959, 2010 WL 4968072 (S.D.N.Y. Dec. 6, 2010) .................................. 16

*Ozon v. Bank of Am., N.A.*,
No. DR-15-CV-057, 2015 WL 11545020 (W.D. Tex. Nov. 9, 2015) .......................... 20

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) (modified) ........................................................ 2, 11, 17

*Perfect 10, Inc. v. Giganews, Inc.*,
No. CV11–07098, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013).............................. 8, 12

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ............................................................................... 14

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
No. CV 23-6647, 2023 WL 8943219 (C.D. Cal. Dec. 5, 2023) .......... 17, 18

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
No. 23-4434, 2025 WL 869209 (9th Cir. Mar. 20, 2025) .......... 12

*Rise Basketball Skill Dev. LLC v. K Mart Corp.*,
No. 16-cv-04895, 2017 WL 4865561 (N.D. Cal. Oct. 27, 2017) .......... 10

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014) .......... 19

*Sid Avery and Assocs. v. Pixels.com, LLC*,
No. CV 18-10232, 2021 WL 736258 (C.D. Cal. Feb. 24, 2021) .......... 13

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*,
708 F.3d 1109 (9th Cir. 2013) .......... 2

*Starship LLC v. Shein Distrib. Corp.*,
No. 2:25-cv-11017, 2026 WL 1455009 (C.D. Cal. Mar. 20, 2026) .......... *passim*

*Stayart v. Yahoo! Inc.*,
651 F. Supp. 2d 873 (E.D. Wis. 2009), *aff'd*, 634 F.3d 436 (7th Cir. 2010) .......... 11

*Stewart v. Kodiak Cakes, LLC*,
537 F. Supp. 3d 1103 (S.D. Cal. 2021) .......... 8

*Stewart v. Screen Gems-EMI Music, Inc.*,
81 F. Supp. 3d 938 (N.D. Cal. 2015) .......... 19

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019) .......... 8, 11

*Wallster, Inc. v. Redbubble, Inc.*,
No. 2:22-cv-02958, 2024 WL 3313746 (C.D. Cal. May 31, 2024) .......... 15

*Wehlage v. EmpRes Healthcare, Inc.*,
791 F. Supp. 2d 774 (N.D. Cal. 2011) .......... 19

*Y.Y.G.M. S.A. v. Redbubble, Inc.*,
75 F.4th 995 (9th Cir. 2023) .......... 1, 14, 15

*Y.Y.G.M. SA v. Redbubble, Inc.*,
No. 2:19-cv-04618, 2020 WL 3984528 (C.D. Cal. July 10, 2020) .......... 8, 13

**Statutes**

15 U.S.C. § 1114(1)(a) ........ 9

47 U.S.C. § 230(f)(2) ........ 17

47 U.S.C. § 230(f)(3) ........ 17

47 U.S.C. § 230(c)(1) ........ 2, 16

Lanham Act ........ *passim*

Tex. Civ. Prac. & Rem. Code Ann. § 41.003 ........ 20

Tex. Prop. Code Ann. § 26.013 ........ 20

**Other Authorities**

Fed. R. Evid. 201(b) ........ 8

Fed. R. Evid. 201(c) ........ 8

Fed. R. Civ. P. 12(b)(6) ........ 20

Fed. R. Civ. P. 12(f) ........ 20

L.R. 11-6.1 ........ 21

L.R. 11-6.2 ........ 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs seek to hold Defendants liable for allegedly infringing third-party t-shirt listings using stylized "Selena" marks and the late singer's name and/or likeness. Shein US Services LLC ("SHS") provides an online marketplace at https://us.shein.com (the "Shein Marketplace") where independent third-party sellers listed and/or sold the accused products. Plaintiffs also sued Shein Distribution Corporation ("SDC") and Shein Technology LLC ("Shein Tech"), but none of the Defendants designed, manufactured, or sold the alleged products. *See* SAC ¶¶ 31, 48. Defendants (collectively, "SHEIN") move for dismissal because the trademark claims are premised on alleged third-party infringement for which they cannot be held directly liable. Nor can they be indirectly liable under the narrower theory of contributory infringement because SHEIN did not intentionally encourage or knowingly contribute to the alleged infringement. Plaintiffs sent alleged notices of infringement and admit the listings were taken down. Plaintiffs also admit that SHEIN implemented a filter to block listings with "Selena" and variations of her name, which Plaintiffs concede is working. Courts generally do not impose liability on online marketplaces that honor takedown requests and take reasonable steps to prevent infringement. *See, e.g.*, *Y.Y.G.M. S.A. v. Redbubble, Inc.*, 75 F.4th 995, 1003 (9th Cir. 2023) ("Removing infringing listings and taking appropriate action against repeat infringers in response to specific notices may well be sufficient to show that a large online marketplace was not [contributorily liable]"); *Starship LLC v. Shein Distrib. Corp.*, 2026 WL 1455009, at *3 (C.D. Cal. Mar. 20, 2026) ("online marketplaces 'that facilitate sales for independent vendors generally escape Lanham Act liability'"). Courts in this judicial district therefore hold that marketplaces like SHEIN are not liable for infringing products sold by third-party sellers. *See* *Starship*, 2026 WL 1455009, at *4-5 (granting SHEIN's motion to dismiss trademark infringement claims premised on third-party listings). The Lanham Act claims fail as a matter of law.

Plaintiffs' unfair competition and right of publicity claims are also barred by the

Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), which immunizes service providers like SHEIN from state law claims that arise out of content (such as product listings) originating from third parties. The CDA "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007) (modified). Accordingly, the CDA bars right of publicity and other state law intellectual property claims against online service providers. *See id.*; *see also Starship*, 2026 WL 1455009, at *7 (dismissing unfair competition claim against SHEIN as barred by § 230 because SHEIN did not "create[s] or sell[s] the infringing products"). Moreover, Plaintiffs do not allege fraud, malice, or gross negligence, and therefore exemplary damages are not recoverable under the asserted Texas statute.

Lastly, Plaintiffs fail to plead any claim against SDC or Shein Tech individually or under a single enterprise theory of liability. Plaintiffs allege only third-party sales and admit none of the alleged products were sold by SDC. They also do not plausibly allege how Shein Tech, a tech-support vendor, caused or contributed to the alleged infringement.

Despite amending after Defendants previewed their arguments, and after Plaintiffs reviewed Defendants' discovery responses and conducted a factual investigation (Chang Decl. ¶¶ 2-9), Plaintiffs' "repeated failure" to plead a viable claim after two amendments warrants dismissal with prejudice. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).

## II. PLAINTIFFS' ALLEGATIONS

### A. Plaintiffs Allege "Third-Party Merchants" Sold Infringing Products

The Shein Marketplace is an online platform where third-party sellers can list items to sell to consumers. SAC ¶ 29. SHS provides the Marketplace. *Id.* ¶¶ 8, 28, 41. SDC is a retailer and sells SHEIN-branded goods "distinct from third-party merchant listings on the Shein Marketplace." *Id.* ¶ 29. While the SAC alleges that Shein Tech "provides information-technology systems" for the Marketplace, *id.* ¶ 28, Shein Tech's interrogatory responses confirm it does not, and Plaintiffs concede dismissal of Shein Tech would be appropriate.

Dkt. No. 36.

Q Productions allegedly owns two stylized "Selena" marks in "cursive-script," neither of which is a word mark, and Suzette Quintanilla allegedly owns the late singer's publicity rights. SAC ¶¶ 15-19, 20-21. They allege "third-party merchants" infringed on these marks and publicity right by listing products on the Marketplace. *Id.* ¶¶ 32-33, 36, & Ex. A. The accused products are shown in Exhibits B and C.

Plaintiffs allege the accused products were offered by third-party sellers and do not plausibly allege that any were sold by SHEIN. *E.g.*, SAC ¶¶ 31-33 (referring to other sellers). ***Plaintiffs admit they "do not presently identify a first-party Shein Distribution SKU as an Infringing Product" and do not "presently allege" that Defendants "designed or manufactured" an accused product***. *Id.* ¶¶ 31, 48. The two product listings in Exhibits B and C disclose that the items were "Sold by" a "3P Seller" named in the Marketplace listing:




*See* SAC Ex. B (Dkt. 35-2 at p.6); *see also* Ex. C (Dkt. 35-2 at p.10) ("Sold by WANGCHAOs"). Plaintiffs omit other listing pages but concede they have not identified SHEIN as the seller, designer, or manufacturer of the products shown.

### B. Plaintiffs Do Not Allege that SHEIN Failed to Remove Accused Listings or Induced Infringement

Like other online marketplaces, "Defendants maintain intellectual property protection policies and practices, product de-listing mechanisms, and a repeat infringer policy applicable to the Shein Marketplace." SAC ¶ 54.[1]

Plaintiffs' August 1, 2025 "Cease & Desist Letter" attached a product page identifying a single SKU "sold by third-party merchant xingm" and alleged search results displaying images without SKUs or URLs to listing pages. *Id.* ¶¶ 50 & Ex. B. Plaintiffs allegedly sent notices on October 30, 2025 and January 27, 2026 of "new listings offering Infringing Products [that] were created and offered for sale on the Shein Marketplace after each such notice." *Id.* ¶ 53. Plaintiffs allege these "new listings" included "listings by merchants previously identified to Defendants," *id.* ¶ 56, but do not attach the notices or show which merchants were the "same third-party merchants" accused of offering "new" infringing listings. *Id.* ¶¶ 53, 56. They instead allege a search on January 27, 2026 "returned Infringing Products" displaying "other sellers." *Id.* ¶¶ 33, 74. The only seller shown was for a single product "Sold by WANGCHAOs". *Id.* Ex. C (Dkt. 35-3 at p.10). This seller and the product were not identified in a prior notice. *Compare* Ex. C *with* Ex. B.

Plaintiffs' conclusory allegation that "Defendants did not cease their infringement and misappropriation" after receiving the C&D letter, SAC ¶ 51, is belied by their failure to allege that SHEIN did not take down specifically identified listings, implicitly conceding that SHS in fact took them down. *See id*. ¶¶ 53, 56. SHEIN even undertook the additional step of "restrict[ing] the terms 'Selena' and 'Selena Quintanilla' from the Shein Marketplace search function," *id.* ¶ 55, even though "Selena" is a common name and Plaintiffs do not own a word mark. "Since that restriction was implemented," a search for allegedly infringing items "returns no results." *Id.* Thus, SHEIN affirmatively acted to stop

---

[1] SHEIN's Anti-Counterfeiting & Intellectual Property Infringement Policy, which the SAC generically refers to, warns sellers that "products offered for sale … must be authentic"; "The sale of counterfeit products" on the Marketplace "is strictly prohibited"; and "Failure to abide by this policy may result in actions against your account, such as suspension or termination," and other penalties. RJN Ex. 2. SHEIN routinely processes takedown requests. *See* RJN Ex. 8.

and prevent alleged infringement of the "Selena" marks and likeness.

### C. Plaintiffs Accuse SHEIN of Infringement Based on Marketplace Operations

Plaintiffs allege "Defendants exercise direct control over the Shein Marketplace and over each listing." SAC ¶ 42. Defendants "approve," "suspend or terminate" sellers; "host, present, arrange, translate, and modify the listings, images, product descriptions, search terms and other content"; "categorize, tag, index, and surface listings through search, navigation, recommendation, ranking, and advertising features"; "market and promote the Shein Marketplace and its listings"; "process payments" for Marketplace sales; "provide or arrange fulfillment, warehousing, shipping, customer service, returns, and dispute resolution"; and "demote, suspend, remove, or otherwise restrict access to any listing or merchant." *Id.* But, such "control" over the Marketplace is not remarkable—virtually all online marketplaces and social media sites monitor and facilitate user activity and user content posted to their site.

Plaintiffs do not plausibly allege that SHEIN exercised control over the Marketplace to create or promote infringing listings. Plaintiffs simply allege that SHEIN hosted and displayed allegedly infringing third-party listings of products in response to user-generated search queries, and that SHEIN generally facilitated sales by processing payments, fulfilling orders, and providing customer service support. SHEIN has not itself used the marks.

SHEIN allegedly modifies "text and images supplied by third-party merchants" to "standardize titles and descriptions," and "translate merchant text into English." SAC ¶ 44. But Plaintiffs do not allege that SHEIN authored or modified the accused listings in any substantive way causing the alleged infringement.[2] By alleging third-party merchants "supplied" "listing titles, descriptions," "text and images," Plaintiffs admit the challenged

[2] SHEIN's Global Marketplace Policy states that third-party sellers are responsible for providing accurate product information, and complying with SHEIN's Restricted Products Policy prohibiting "Products that infringe copyrights, trademarks, trade dress, or patent rights" and "Products that infringe rights of publicity or privacy rights"). RJN Exs. 3-4.

content was created by third-party sellers, not SHEIN. *See id.* ¶¶ 29, 31, 32, 41, 44.

SHEIN allegedly promotes the Marketplace through "paid digital advertising" like its "social media accounts and influencer marketing campaigns." *Id.* ¶ 47. But Plaintiffs fail to allege that SHEIN advertised the accused listings through these channels or used the "Selena" marks or image to promote the Marketplace. Nor do they allege that SHEIN purchased "Selena" as a keyword for use in sponsored ads or that SHEIN solicited or encouraged sales of "Selena" products.

SHEIN allegedly "index[es], rank[s], recommend[s], and surface[s] listings through search, navigation, and recommendation features" on the platform. *Id.* ¶ 46. But indexing, "select[ing] and attach[ing] search keywords and tags (including 'Selena' and 'Selena Quintanilla')" to Marketplace listings, *id.* ¶ 44, simply enables users to perform keyword searches (such as for "SELENA" and "selena t shirt") to locate relevant Marketplace listings. *See id.* ¶ 34 (SHEIN "displayed the Infringing Products on the Shein Marketplace using Selena's name, photograph, likeness, identity, and persona in product images and titles, and made the Selena Marks searchable text on shein.com, so that a consumer query for 'SELENA' returned those listings"). Plaintiffs do not allege that SHEIN intentionally designed its search algorithms to drive traffic based on listings that use the "Selena" marks or her name and likeness. Nor do they allege that SHEIN curated or selected the accused listings. While Plaintiffs assert that SHEIN "control[s] the visibility and ranking of listings" on the Marketplace, *id.* ¶ 43, the "Ranking Policy" explains that listings are ranked based on price competitiveness, availability, newness, discounts, delivery speed, seller ratings and performance, customer reviews, and return rates—factors that reflect seller and user-driven activity. RJN Ex. 6 at p.2. The policy also explains that the "recommender system" is based on "user interaction" with the site, where search results may be influenced by a user's prior search queries and browsing history. *Id.* at 3. Not surprisingly, Plaintiffs' own searches for "selena t shirt" or "Selena" resulted in third-party listings for t-shirts with "Selena" appearing in product titles and descriptions. *See* SAC Exs. B & C. As alleged and shown, SHEIN's search tool simply displayed relevant search results based on a keyword query.

Lastly, SHEIN allegedly facilitates Marketplace transactions, including by processing payments, fulfilling orders, designating certain listings with "QuickShip" (by sellers offering faster shipping), and providing customer service support. SAC ¶ 48. But Plaintiffs do not allege that SHEIN was the seller or manufacturer of any accused product, or held title to the products, or acted as an agent on behalf of third-party sellers.[3] Plaintiffs allege nothing showing that SHEIN warehoused or shipped any of the accused products—to the contrary, the attached product listings state "Ships from [the 3P seller]," not from SHEIN's warehouse.[4]

In sum, other than boilerplate allegations that track general platform services provided by SHEIN in operating the Shein Marketplace, Plaintiffs do not allege any facts demonstrating that SHEIN engaged in infringing conduct or otherwise asserted any control over the allegedly infringing activities of third-party sellers.

## III. LEGAL STANDARD

A complaint must allege sufficient facts to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must accept as true only "well-pleaded allegations of material fact" but not "allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Accordingly, courts may consider on a motion to dismiss "documents incorporated

[3] SHEIN's Terms of Use states "SHEIN does not own any of the products that are listed by Third-Party Sellers," and "SHEIN is not a party to any transaction for products listed by Third-Party Sellers." RJN Ex. 7. at § 5.5. Further, title transfers from "the Third-Party Seller if you purchase a product sold by a Third-Party Seller" directly to the purchaser. *Id.* at § 5.4.

[4] The SHEIN Marketplace Services Agreement states that "use of the fulfilment services is entirely optional and not compulsory," RJN Ex. 1, and the policy regarding SHEIN Fulfillment Service confirms that SHEIN does not take title to third-party products. RJN Ex. 5 §§ 2.2 (sellers are the importer/consignee for overseas products), 5.1 (sellers "retake title" from customers of returned products).

by reference in the complaint, or matters of judicial notice." *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1128 (S.D. Cal. 2021); *see also* *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). The Court may therefore consider RJN Exs. 1-8. Fed. R. Evid. 201(b)-(c); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159-60 (9th Cir. 2012).

## IV. ARGUMENT

### A. Plaintiff Does Not Plausibly Allege that SHEIN Used the "Selena" Marks

"[O]nline marketplaces 'that facilitate sales for independent vendors generally escape Lanham Act liability.'" *Starship*, 2026 WL 1455009, at *3 (citing *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 446 (6th Cir. 2021)). Direct liability for trademark infringement requires that a defendant "personally uses infringing marks in connection with the sale, distribution or advertising of goods or services." *Gas Drawls, LLC v. Whaleco, Inc.*, 2025 WL 4058287, at *2 (C.D. Cal. Dec. 5, 2025) (citing *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005)). Because "[d]irect infringement requires that the defendant itself 'use' the mark[,] it is insufficient for direct infringement purposes to allege that a defendant allows third parties to use the mark." *Perfect 10, Inc. v. Giganews, Inc.*, 2013 WL 2109963, at *14 (C.D. Cal. Mar. 8, 2013) (defendants were not directly liable for "providing access to a forum where content bearing a trademark may be obtained" from third parties). Thus, direct infringement claims based on third-party conduct generally do not hold up against online platforms. *See, e.g.*, *Ligeri v. Amazon.com Servs. LLC*, 2025 WL 3013727, at *3 & n.6 (W.D. Wash. Oct. 28, 2025) (courts have "squarely rejected" liability for "direct trademark infringement and/or false designation of origin under the Lanham Act due to [defendant's] ownership and management of the platform where the alleged infringement occurred"); *Y.Y.G.M. SA v. Redbubble, Inc.*, 2020 WL 3984528, at *4 (C.D. Cal. July 10, 2020) ("[T]he law provides a well-developed legal doctrine for imposing liability on the proprietor of a marketplace for infringement by a third-party seller. That doctrine is contributory trademark infringement."); *see also* *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 733 (9th Cir. 2019) (no direct copyright infringement where online marketplace is "populated with data submitted by third-party sources," and the platform did

not select infringing content or exercise control beyond the general operation of its website).

Q Productions alleges no facts showing that SHEIN used the "Selena" marks in commerce. 15 U.S.C. § 1114(1)(a). Rather, Defendants merely operated the Marketplace where the accused third-party merchant listings were displayed in response to user-generated searches. SAC ¶¶ 36, 42. This activity is mere passive facilitation of third-party sales, and based on similar facts, Judge Blumenfeld recently held such allegations are insufficient to allege direct infringement. *See* *Starship*, 2026 WL 1455009, at *3-4 (granting SHEIN's motion to dismiss). For example, Plaintiff does not allege that SHEIN designed, created, manufactured, sold, or took title to the accused products. Nor has Plaintiff plausibly alleged that Defendants used the Selena marks and image in commerce. For instance, Plaintiffs fail to allege facts showing that SHEIN itself used the asserted marks in any advertisements, and allegations arising from SHEIN's operation of the Marketplace do not give rise to direct liability under the Lanham Act. *See* *Id.* at *3-4 (rejecting arguments that SHEIN sells or creates infringing products where SHEIN "does not take title to the products," third-party sellers design and upload the infringing designs onto the Marketplace, and "other theories of direct liability—based on pricing, search functionality, order fulfillment, and customer communications—are consistent with Defendants' operation of an online marketplace and similarly do not establish direct infringement").

1. Plaintiff does not allege an infringing advertisement

As in *Starship*, the SAC "pleads no supporting facts" establishing that SHEIN used the marks "in connection with the advertising and offering for sale of goods." *Starship*, 2026 WL 1455009, at *3; SAC ¶ 64. While Plaintiff alleges that SHEIN places digital ads and promotes Marketplace listings through various advertising channels, SAC ¶ 47, Plaintiff identifies no "supporting details" of infringing advertisements and therefore fails to allege "use of [a] trademark." *Starship*, 2026 WL 1455009, at *4.

2. SHEIN's generic search tool does not infringe Plaintiff's marks

Plaintiff's contention that third-party listings containing the word "Selena" appeared

in response to user searches, purportedly a result of SHEIN's "indexing, categorization, tagging, ranking, recommendation, search, and display of the listings," does not allege *SHEIN*'s use in commerce of any alleged mark. SAC ¶ 64. *First*, Plaintiff does not own a word mark for "Selena," only stylized logos; the appearance of listings containing the word "Selena" in response to *text-based* searching (as shown in Exhibits B and C) does not involve use of the stylized cursive marks. *See* SAC Ex. A; *Bear Omnimedia LLC v. Mania Media LLC*, 2018 WL 2323463, at *4 (D. Nev. May 22, 2018) (dismissing contributory infringement claim against Instagram premised on use of the word "BEAR" where plaintiff owned a logo but not the "word imbedded in the logo," and thus was "not entitled to preclude others from using" the word "apart from the stylized elements of the logo"); *Rise Basketball Skill Dev. LLC v. K Mart Corp.*, 2017 WL 4865561, at *3 (N.D. Cal. Oct. 27, 2017) (whereas "ownership of a word mark entitles the owner exclusive rights in the word for the class of goods specified on the trademark," "ownership of a design mark limits the owner's rights exclusively to the specific design trademarked").

*Second*, indexing, categorizing, and tagging terms (even if it involved use of a protected word mark, which Plaintiff does not allege) reflects backend activities that are not visible to consumers and do not constitute trademark infringement. *See, e.g.*, *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 250 n.7 (2d Cir. 2024) ("a defendant's use of a plaintiff's trademark in an unpublished directory of terms does not constitute a trademark infringement under the Lanham Act") (citation modified).

*Third*, courts routinely hold that the "display[]" of accused listings in response to user-generated searches does not constitute use of the mark in commerce by a marketplace, regardless of whether those results are allegedly "ranked" or "sorted by recommend." Search queries inherently involve ranking because they are displayed in an order (top to bottom or left to right) based on the relevant criteria, and SHEIN's Ranking Policy explains that the visibility of Marketplace listings is automatically developed based on factors related to seller performance and user activity, not selective curation or targeting of infringing content by SHEIN. *See supra* Part II.B. Contrary to Plaintiff's contention that

these are "Shein-generated results" because SHEIN "control[s] whether and how listings bearing the Selena Marks are surfaced to consumers" in response to text-based search queries (SAC ¶¶ 33, 43, 62-64), Exhibits B and C clearly show that the search results were generated by Plaintiff's own searches for "selena t shirt" and "selena." *See Gas Drawls*, 2025 WL 4058287, at *3 (rejecting theory that defendant "knowingly offer[ed]" mark as a "search keyword that triggered the display of the infringing listings" where plaintiff "found the listings by typing the [asserted mark] into the search bar"). SHEIN did not display, "surface[,]" or "recommend" the accused listings independent of Plaintiff's own activities on the site. That SHEIN is directly liable for automatically displaying allegedly infringing third-party designs in search results triggered by Plaintiffs' own search queries for "Selena" is a novel theory no court has adopted. *Altinex v. Alibaba.com Hong Kong Ltd.*, 2016 WL 6822235, at *5 n.2 (C.D. Cal. Mar. 25, 2016) ("creation and operation of" marketplace's "search engine" that displayed third-party listings based on user-entered terms was not "'use in commerce' of any of the potentially near-infinite trademarked terms an end user may choose to enter in a freeform search query"); *King Spider LLC v. Panda (Hong Kong) Tech. Co., Ltd.*, 2025 WL 89123, at *7-8 & n.4 (S.D.N.Y. Jan. 14, 2025) (holding results page showing translated, algorithmically-displayed listings and thumbnail images correlated to user-entered search terms, was not an advertising use of the mark); *cf. VHT, Inc.*, 918 F.3d at 732 (online marketplace not liable for automatic copying, storage, or transmission of copyrighted materials "when instigated by others"); *Perfect 10, Inc.*, 847 F.3d at 668-69 (no direct infringement for displaying and distributing copyrighted images automatically upon request by users); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673, at *4 (W.D. Wash. July 16, 2015) (no direct copyright infringement where "the content of the website was provided by a third-party vendor, and was handled in an entirely automated manner to generate product detail pages or ads"); *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 885 (E.D. Wis. 2009) (search engine "only displays the content in response to a []user's search results," does not create the content and thus does not use plaintiff's name in connection with its own goods or services), *aff'd*, 634 F.3d 436 (7th Cir. 2010).

Courts do not impose direct liability on platforms for hosting infringing user content. There is "no authority holding that providing a search tool gives rise to liability for third-party content." *Starship*, 2026 WL 1455009, at *4. Providing neutral tools like a search function to users and third-party sellers does not constitute use of a mark or trademark infringement. *See, e.g.*, *Perfect 10, Inc.*, 2013 WL 2109963, at *14 ("Defendants do not 'use' Plaintiff's marks in a commercial transaction by merely offering a search function that allows third parties to search for images using Plaintiff's marks as search terms."); *Lopez v. BigCommerce, Inc.*, 2017 WL 3278932, at *3 (S.D.N.Y. Aug. 1, 2017) (dismissing Lanham Act claims against Google premised on "organic search results" because "'[t]he mere appearance of Plaintiff's name or image as part of the search results displayed in response to a user-generated query does not mean that the relevant company used Plaintiff's name for advertising or trade purposes'"); *cf. Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2025 WL 869209, at *1 (9th Cir. Mar. 20, 2025) ("Tools that recommend or suggest third-party content 'are tools meant to facilitate the communication and content of others,' and 'are not content in and of themselves.'"). ***Plaintiff has not alleged that SHEIN placed the alleged marks on any goods or services. Simply indexing search terms and automatically populating search results on an online marketplace does not constitute trademark use of the asserted marks.*** *See, e.g.*, *Altinex*, 2016 WL 6822235, at *5, 6 & n.2 (defendant had no "affirmative duty … to police its search engine algorithm to ensure that its search engine does not retrieve particular results based on third parties' independent actions in authoring listings"); *Comeback Media, Inc. v. Particle Media, Inc.*, 2025 WL 3030438, at *4 (N.D. Cal. Oct. 30, 2025) (dismissing direct infringement claim; defendant's search service did not constitute defendant's trademark use but mere facilitation of third-party use); *Merck & Co. v. Mediplan Health Consulting*, 425 F. Supp. 2d 402, 415 (S.D.N.Y. 2006) ("in the search engine context, defendants do not 'place' the [plaintiff's] marks on any goods . . . , nor do they use them in any way to indicate source or sponsorship" where the "mark is 'used' only in the sense that a computer user's search of the keyword . . . will trigger the display of sponsored links," which "is not use of the

mark in a trademark sense").

3. No direct liability for facilitating third-party Marketplace transactions

SHEIN does not directly use the asserted marks by facilitating third-party sales through "managing an online sales platform". 2026 WL 1455009, at *4. As held in *Starship*, allegations that "Defendants handle product shipments through their warehouses when fulfilling product orders" were "insufficient to allege direct infringement" where, like here, there were no factual allegations that SHEIN manufactured or took title to the products. *Id.* at *3; *see also Gas Drawls*, 2025 WL 4058287, at *2 (dismissing direct infringement claim against "marketplace that facilitates transactions between consumers and [third-party] merchants or that fulfills orders from inventory supplied by third party sellers") (citation modified).

*Starship* is not alone in holding that an online platform is not a direct infringer for facilitating third-party sales of infringing products. *See, e.g.*, *Y.Y.G.M.*, 2020 WL 3984528, at *1, 3-4 (Redbubble was not directly liable for trademark violations where third-party artists upload their artwork for sale and the platform fulfills orders by selecting vendors to print and ship products to purchasers); *Sid Avery and Assocs. v. Pixels.com, LLC*, 2021 WL 736258, at *4 (C.D. Cal. Feb. 24, 2021) ("The fact that Pixels processes payments, transmits order information to manufacturers, or updates its code to set minimum pricing or add new items . . . shows only that it controls its operations as a service provider, not the infringing activity."); *Milo & Gabby*, 2015 WL 4394673, at *6 ("reject[ing] Plaintiffs' contention that Amazon is liable for trademark infringement based on its sales and shipment of physical items" where "third-party sellers retain full title to and ownership of the inventory sold by the third party"), *aff'd*, 693 F. App'x 879, 885-87 (Fed. Cir. 2017).

**B. SHEIN is Not Contributorily Liable – the SAC Does Not Allege that SHEIN Intentionally Encouraged Infringement, and SHEIN Disabled Access to the Accused Listings**

In *Cox Commc'ns, Inc. v. Sony Music Entm't*, 607 U.S. 583 (2026), the U.S. Supreme Court narrowed liability imposed on online platforms for third-party infringement by

holding that "[t]he provider of a service is contributorily liable for the user's infringement *only* if it intended that the provided service be used for infringement." Cox, 607 U.S. at 592-93 (emphasis added) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) and *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 440-41 (1984)). Under *Cox*, "contributory liability can be shown only if the party induced the infringement" (by "actively encourag[ing] infringement through specific acts" as in *Grokster*) or if "the provided service is tailored to that infringement," (*i.e.*, if it cannot meet the *Sony* safe harbor by showing the service is capable of substantial noninfringing uses). *Cox*, 607 U.S. at 593. Thus, "affirmative intent" to infringe is required. *Id.* at 594. "[M]ere knowledge that a service will be used to infringe is *insufficient* to establish the required intent to infringe." *Id.* (emphasis added); *see also* *id.* at 595 (holding that contributory infringement could not be premised simply on "supplying a product with knowledge that the recipient will use it to infringe copyrights") (citation modified).

While *Cox* involved copyright claims, the Ninth Circuit holds that "because 'trademark infringement liability is more narrowly circumscribed than copyright infringement,' the standard for contributory trademark infringement would be at least as demanding." *Redbubble, Inc.*, 75 F.4th at 1001 (applying to trademark claims the standard "[f]or contributory *copyright* infringement," citing *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013)); *see also* *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007) ("[t]he tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement"). Although no court has yet to address the application of *Cox* to trademark claims, the Ninth Circuit expressly relied on precedent under copyright law to formulate the standard for contributory liability under the Lanham Act.

Given these principles, the *Cox* standard for contributory infringement should apply here. The SAC does not allege that SHEIN *intentionally* induced the infringement by "actively encourag[ing]" the sale of infringing products or that SHEIN "promoted and marketed" its marketplace platform "as a tool to infringe" intellectual property rights. *Cox*,

607 U.S. at 593. Based on *Cox* and Ninth Circuit law expressly applying the test for contributory copyright infringement to trademark claims, Plaintiff cannot state a claim as a matter of law. *See, e.g.*, *Lee v. SBS Corp.*, 2026 U.S. Dist. LEXIS 153305, at *5 (C.D. Cal. July 9, 2026) (dismissing copyright claim against eBay for alleged third-party infringing listings where complaint "does not plausibly allege facts [supporting] Defendant['s] inten[t] that its online commercial marketplace service be used for infringement").

Dismissal is also warranted under pre-*Cox* law. The SAC alleges, in conclusory fashion, that SHEIN had "knowledge" that infringing products were sold on its platform based on Plaintiffs' notices. But Plaintiffs do not allege that SHEIN failed to remove allegedly infringing listings identified in these notices, that SHEIN had *specific* knowledge of *particular* listings for infringing products, or that SHEIN materially contributed to the alleged infringement. The C&D Letter identified a single listing by seller "xingm" and overinclusive search results that did not specify by SKUs or URLs which listings, products, and sellers were infringing. *See* SAC Ex. B. Plaintiffs' allegations do not establish more than generalized knowledge of infringement, which is not enough to state a claim. As held in *Redbubble* (pre-*Cox*), for an online marketplace to be found liable for alleged infringement by its users, it "must have 'contemporary knowledge of which *particular* listings are infringing or will infringe in the future.'" 75 F.4th at 1000-02. Thus, *Starship* held that SHEIN was not contributorily liable for trademark infringement where the plaintiff "d[id] not dispute that Shein removed the identified listings" and only "conclusorily assert[ed] that Defendants permitted the same or similar infringing goods to reappear on the website" without any allegation that they "failed to remove a reappearing listing despite having knowledge of it." 2026 WL 1455009, at *5; *see also* *Free Kick Master LLC, et al. v. Apple Inc., et al.*, 2016 WL 777916, at *11-12 (N.D. Cal. Feb. 29, 2016) (dismissing contributory infringement claim with prejudice because plaintiffs cannot allege Amazon "knew its third-party developers were infringing the plaintiffs' mark but continued to allow the infringing apps to remain available in the defendants' application stores"); *Wallster, Inc. v. Redbubble, Inc.*, 2024 WL 3313746, at *2, 8 (C.D. Cal. May 31, 2024) (plaintiff's notice

stating there were "28+ listings" from same seller did not give defendant "actual or apparent knowledge" of specific infringing listings apart from a single listing identified by URL); *Nomination Di Antonio E Paolo Gensini S.N.C., et al. v. H.E.R. Accessories Ltd., et al.*, 2010 WL 4968072, at *6 (S.D.N.Y. Dec. 6, 2010) (dismissing complaint that failed to allege defendants "were alerted to specific instances of infringement and that they continued to supply their services after they knew or should have known that their services were being used to infringe").

*Starship* also held that SHEIN is not liable for providing a generic search tool that allegedly displays infringing third-party listings in response to user-generated search queries. 2026 WL 1455009, at *4. SHEIN's implementation of a filter to block potentially infringing listings from surfacing in user search results, SAC ¶ 55, which is not required, defeats a contributory infringement claim based on knowledge and inaction.

Accordingly, SHEIN is not liable for contributory infringement.

**C. Plaintiff's Unfair Competition and False Designation Claims Are Derivative of the Trademark Infringement Claims and Thus Fail for the Same Reasons**

Plaintiff Q Productions's claims for false designation of origin and unfair competition, are all premised on the same allegations as the trademark infringement claims, and thus all fall together "because their elements are similar." *Gas Drawls*, 2025 WL 4058287, at *2; *see also* SAC ¶¶ 83-97 (alleging boilerplate recitals of the law and allegations at ¶¶ 84, 92 mirror the infringement claims at ¶¶ 64, 77).

**D. Section 230 of the CDA Bars Plaintiffs' State Law Claims for Unfair Competition and Violation of the Right of Publicity**

The CDA shields service providers like SHEIN from liability under state law for content created by third parties. It states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Further, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). The Ninth Circuit held that §230 establishes

broad "federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc.*, 488 F.3d at 1118-19 (citations modified). Thus, state law intellectual property claims, including right of publicity claims, are barred by the CDA. *Id.*

SHEIN is entitled to § 230 immunity because Plaintiffs' state law claims are premised on its alleged display of the asserted marks and "Selena's name, signature, photograph, and likeness" on third-party seller listings. SAC ¶¶ 84, 92, 101-102.

First, SHEIN is an "interactive computer service" provider because its website allows third-party users to post listings of items for sale to other users. *See* SAC ¶ 29 (alleging us.shein.com hosts "third-party merchant listings" ); 47 U.S.C. § 230(f)(2); *Gas Drawls*, 2025 WL 4058287, at *5 ("'interactive service providers' has been interpreted to include a wide range of cyberspace services, including online retailers" and "online marketplaces" like eBay); *Starship*, 2026 WL 1455009, at *6-7 (ruling SHEIN was entitled to CDA immunity).

Second, Plaintiffs seek to hold SHEIN as a "publisher or speaker" of information provided by "another information content provider" because SHEIN displayed third-party listings using the "Selena" marks, name or likeness. SAC ¶¶ 84, 92, 101, 102. As this Court observed, "courts routinely find that allegations that defendants published or failed to remove offending content . . . necessarily seek to hold defendants responsible as publishers." *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2023 WL 8943219, at *3 (C.D. Cal. Dec. 5, 2023) (CDA barred claims against Amazon arising out of third-party listings for products that were falsely advertised).

Third, Plaintiffs do not plausibly allege that SHEIN created allegedly infringing content because the accused product designs and listings originated from third-party merchants. Plaintiffs contend that Defendants are "information content providers within the meaning of 47 U.S.C. § 230(f)(3)" because they "translate merchant text into English, edit and standardize titles and descriptions, select and attach search keywords and tags (including 'Selena' and 'Selena Quintanilla'), assign categories, compose the consumer-

facing product-detail-page, determine search ranking and recommendation placement, apply QuickShip and related badges, and transmit product advertising feeds to third-party advertising platforms and search engines." SAC ¶ 44. However, none of these alleged activities materially contributed to the allegedly infringing nature of the content at issue.

"A material contribution does not refer to merely augmenting the content generally, but to materially contributing to its alleged unlawfulness." *Planet Green Cartridges*, 2023 WL 8943219, at *6 (citation modified). "The material contribution test draws the line at the crucial distinction between, on the one hand taking actions to display actionable content, and on the other hand, responsibility for what makes the displayed content itself illegal or actionable." *Id.* (citation modified). As this Court explained the "dissemination of the offending content by creating promotional emails and search engine marketing content," including applying "a special badge" to endorse products, does not materially contribute to the alleged illegality of third-party content because "the Ninth Circuit has held that neutral and generic actions, even if they spread the reach of some of the offending material, do not defeat Section 230 immunity." *Id.* Likewise, SHEIN does not lose CDA immunity by providing a search tool that publishes the offending content because "providing *neutral* tools to carry out what may be unlawful or illicit searches does not amount to 'development' for purposes of the immunity exception." *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008). SHEIN's alleged "sort by recommend" feature also does not materially contribute to the alleged infringement because "recommendations" are "neutral tools" used to "facilitate the communication and content of others." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019). Thus, Plaintiffs' allegations merely describe "content neutral actions by Defendants related to the dissemination" of the allegedly infringing third-party content, which this Court ruled does not deprive an online marketplace of CDA immunity. *See Planet Green Cartridges*, 2023 WL 8943219, at *7.

Accordingly, Plaintiffs' state law claims are barred by § 230 of the CDA. *See Starship*, 2026 WL 1455009, at *7.

**E. Plaintiffs Cannot in Good Faith Plead a Claim Against SDC or Shein Tech**

Plaintiffs also have no credible basis to sue SDC or Shein Tech for claims arising out of third-party Marketplace listings, which only implicate SHS as the provider of the Marketplace. SAC ¶¶ 8, 41, 48. Plaintiffs allege SDC is a retailer that sells SHEIN-branded goods, but concede they are unaware of any accused product sold by SDC. *Id.* ¶¶ 41, 48. While the SAC alleges that Shein Tech "provides information technology and related services to Shein Distribution" and "designs and operates information-technology systems used to host, translate, tag, rank, search and display listings" on us.shein.com, Shein Tech's discovery responses confirm that it does not provide these alleged services for the Marketplace. *Id.* ¶¶ 8, 41; *see also* Dkt. No. 36 (suggesting that dismissal of Shein Tech is appropriate on the basis of such verified discovery responses). Thus, Plaintiffs cannot legitimately state a claim against SDC or Shein Tech.

Moreover, Plaintiffs do not sufficiently plead liability under a single enterprise theory. To plead such a claim, Plaintiffs must plausibly allege facts sufficient to show that: "(1) there is such a unity of interest and ownership that the separate personalities of the two corporations no longer exist; and (2) if the acts are treated as those of only one of the corporations, an inequitable result will follow." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 960 (N.D. Cal. 2015). Plaintiffs allege only that Defendants "share a common indirect operating parent" and "at least one common officer, manager, director, or employee." SAC ¶¶ 7-8. But "[c]ommon ownership alone is insufficient to disregard the corporate form." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014). Plaintiffs allege no other facts to substantiate their conclusory assertion that "Defendants operate as a single integrated enterprise." SAC ¶ 8; *see Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015) ("[A] plaintiff must allege specific facts supporting both of the elements of alter ego liability") (citation modified); *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 783 (N.D. Cal. 2011) (broad allegations that the entities share officers, directors, and employees are not sufficient to show a unity of interest). Plaintiffs therefore have not pleaded a single enterprise theory of liability.

**F. Plaintiffs Are Not Entitled to Exemplary Damages**

The SAC's prayer for relief seeks exemplary damages under Tex. Prop. Code Ann. § 26.013. However, Plaintiffs fail to plead facts of fraud, malice, or gross negligence that support an exemplary damages award. Tex. Civ. Prac. & Rem. Code Ann. § 41.003; *City of Ingleside v. Kneuper*, 768 S.W.2d 451, 455 (Tex. App. 1989) ( "traditional requirements for [exemplary] damages" are required for "Texas statutes provid[ing] for a recovery of exemplary damages without an express requirement of malice"); *Ozon v. Bank of Am., N.A.*, 2015 WL 11545020, at *5 (W.D. Tex. Nov. 9, 2015) (recommending dismissal of request for exemplary damages and concluding that motions to dismiss "to dispose of insufficiently pled claims for [exemplary] damages" are proper). To the extent that the right of publicity claim survives, the request for exemplary damages should be dismissed and/or stricken from the SAC's prayer for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f), as there are no factual allegations to support such damages. 1

**V. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be granted with prejudice.

Dated: September 17, 2026 GREENBERG TRAURIG, LLP

By: */s/Lori Chang*
Valerie W. Ho
Lori Chang
David H. Marenberg
Attorneys for Defendants Shein Distribution Corporation, Shein US Services, LLC, Shein Technology, LLC

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendants Shein Distribution Corporation, Shein US Services, LLC, and Shein Technology, LLC, certifies that this brief contains

6,883 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 17, 2026 GREENBERG TRAURIG, LLP

By: */s/Lori Chang*
Lori Chang

**Certificate of Compliance Regarding Use of Generative AI**

The undersigned, counsel of record for Defendants Shein Distribution Corporation, Shein US Services, LLC, and Shein Technology, LLC, discloses that generative artificial intelligence was used minimally in this brief for initial rounds of legal research and proofreading, *see* Chang Decl. at ¶ 11, and certifies that an attorney personally reviewed and verified the accuracy of all legal citations, quotations, factual statements, and analyses contained in this document in compliance with Honorable Walter's Standing Order, Dkt. 10.

Dated: September 17, 2026 GREENBERG TRAURIG, LLP

By: */s/Lori Chang*
Lori Chang